# Exhibit 1

Filed: 10/2/2020 11:11 AM
Juanita Allen
District Clerk
Caldwell County, Texas

Leslie Estrada

Cause No: 20-O-397

| | | |
|---|---|---|
| TWYLA L. MILLER, | ) | IN THE DISTRICT COURT |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 421st  JUDICIAL DISTRICT |
| | ) | |
| U.S. BANK NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE, FOR | ) | |
| LEHMAN ABS MANUFACTURED | ) | |
| HOUSING CONTRACT | ) | |
| SENIOR/SUBORDINATE ASSET- | ) | |
| BACKED CERTIFICATE TRUST, | ) | |
| SERIES 2001-B AND | ) | |
| NEWREZ LLC, F/K/A NEW PENN | ) | |
| FINANCIAL, LLC, D/B/A | ) | |
| SHELLPOINT MORTGAGE | ) | |
| SERVICING, | ) | |
| **Defendant.** | ) | OF CALDWELL COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND REQUEST FOR DISCLOSURES

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, TWYLA L. MILLER, hereinafter called Plaintiff, by and through her attorney, Robert C. Newark, III, and files this Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction and in support thereof would show unto the Court the following:

### DISCOVERY CONTROL PLAN

1.      The Plaintiff herein intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

### PARTIES

2.      Plaintiff, Twyla L. Miller, is an individual that resides in Travis County, Texas.

1

3. Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B (hereinafter referred to as "Lender") is a federal savings bank doing business in Texas and may be served via its registered agent, at CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

4. Defendant, NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, (hereinafter referred to as "Servicer") is a foreign corporation doing business in Caldwell County, State of Texas, and is the purported servicer of the Deed of Trust subject to this Petition. Servicer may be served via its registered agent at Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St, Ste 620, Austin, TX 78701-3136.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition, arose, in whole or in part, in Caldwell County, Texas and the amount in controversy exceeds the minimal jurisdictional limits of the court.

6. This Court has personal jurisdiction over the Defendant because the acts and omissions complained of herein occurred in Texas, the Defendant does and/or did do business in the State of Texas, has committed a tort, in whole or in part in Texas, is a resident and citizen of Texas, has minimal contacts with the State of Texas during the period of time complained of herein.

7. Venue is properly laid in Caldwell County, Texas, because all or a substantial part of Plaintiff's cause of action arose in Caldwell County, Texas.

2

## NATURE OF SUIT

8.      This is a suit to enjoin and refrain a foreclosure sale proceeding scheduled by Defendant, for Tuesday, October 6, 2020, between 10:00 am and 4:00 pm at the location designated by the county clerk.

9.      In addition to the aforementioned request for the extraordinary relief to abate the foreclosure proceeding, Plaintiff brings this lawsuit against Defendant alleging negligence, violation of RESPA, 12 C.F.R. Sec. 1024, et seq., violation of the Texas Prop. Code Ann. Sec. 51.002 et seq., actual damages and attorney fees.

## EXISTENCE OF CONTRACT AND PERFORMANCE

10.      On or about March 20, 1998, Plaintiff entered into a written contract with Lender, for the purchase of a house and lot located at 871 Political Rd, Lockhart, TX 78644. See Exhibit A – Deed of Trust

11.      The original principal of the contract was $103,262.51.

12.      Plaintiff attempted to obtain a loan modification and attempted to get reinstatement numbers or payoff information. Defendant never provided that information.

13.      Even while attempting to do that, Defendant moved forward with foreclosure proceedings.

## NEGLIGENCE

14.      Plaintiff alleges that the Lender had a duty to Plaintiff to provide notice of any transfer, assignment, or sale of the note, to properly manage the loan and the escrow amount, to comply with the notice provisions contained in the deed of trust before accelerating the note and foreclosing on the property, and, when applying for a mortgage modification, to protect their

rights and not mislead them. As shown above, Lender breached the duties it owed to Plaintiff and as a result of this breach Plaintiff was damaged.

15.     The duty of the Lender can be found in the regulation of the Department of Housing and Urban Development ("HUD") which is incorporated with the Deed of Trust.

16.     A Lender can be found liable to its customers for negligent misrepresentation in the servicing of the Loan. *See Federal Land Bank Assn'*, 825 S.W.2d 439, 442 (Tex. 1992). Even a Lender's accidental false representation can be actionable. *See Milestone Props. Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex. App – Austin 1993). *SusserPetCo. V. Latina Oil Corp.*, 574 S.W.2d 830, 832 (Tex. App. – Texarkana 1978, no writ).

17.     Lender failed to perform its duties as mortgage servicer. Lender avoided and evaded Plaintiff inquiries about an appeal an appeal of his modification application. Subsequently, without offering more than one loan workout alternative or replying to Plaintiff inquiries regarding an appeal to denial of a HAMP modification, the Lender, forwarded a notice posting foreclosure sale of Plaintiff's property for October 6, 2020.

18.     As a result of Lender's negligence, Plaintiff is in danger of being dispossessed of his property. Lender's mishandling of Plaintiff's loss mitigation constitutes a negligent misrepresentation.

19.     As a result, Lender has breached the written contractual agreements and covenants of the note and the requirements pursuant to the Bureau of Consumer Financial Bureau pursuant to applicable law.

20.     As a result of Lender's breach, Plaintiff has suffered harm as he has incurred additional charges to his loan balance and escrow account and is continuing to incur them to the present.

4

## VIOLATION OF TEXAS. PROP. CODE ANN. SECTION 51.002, ET SEQ.

21.     Mortgage foreclosures in the State of Texas are governed by the express terms of the Deed of Trust and by Chapter 51 of the Property Code.

22.     More specifically, it is well settled by statue that the mortgagee is required to (1) notify the mortgagor by certified mail that the Deed of Trust is in default and give him or his at least twenty (20) days to cure and/or protest and (2) give mortgagor at least twenty-one (21) days notice of the sale by certified mail.  Tex. Prop. Code Ann. 51.0002(b)(3), (d).

23.     In the case at bar, Plaintiff's mortgage loan including Deed of Trust set out terms of default and acceleration in its covenants and as such when he received the notice of accelerations, he in fact did raise issues regarding his loan and payment history and pending loan workout alternatives as such until the disputes were resolved any notice to post his property for sale would be premature.

24.     To wit, if Lender and Servicer are allowed to proceed with the finalization of the foreclosure proceedings of Plaintiff's property, Plaintiff will suffer immediate and irreparable injury.

25.     Specifically, Plaintiff will be harmed in that he will lose all of the money previously invested in the property without having a fair opportunity to protect the investment of which Plaintiff has no adequate remedy at law.  Plaintiff has no alternative but to seek injunctive relief.

### BREACH OF CONTRACT

26.     The elements of a breach of contract action are:  (1) the existence of a valid contract; (2) performed or tendered performance by the Plaintiff; and (3) breach by the Defendant.

27.     Plaintiff alleges that Lender and Servicer failed to comply with HUD regulations outlining procedures that must be followed prior to accelerating and foreclosing a loan subject to the FHA.

28.     Specifically the Deed of Trust expressly provided that the acceleration and foreclosure on Plaintiff's loan are subject to limitation through regulations required Lender and Servicer to make reasonable efforts 203.604(b); inform Plaintiff of any assistance option, 24 C.F.R, 203.605, 203.501, before accelerating the loan and proceeding with foreclosure. Such provision can be found in paragraph 4 of Beneficiary's Rights.

29.     The Lender and Servicer failed to follow the foregoing steps and thus breached the contract with Plaintiff.

30.     As a result, Lender and Servicer have breached the written contractual agreements and covenants of the note by wrongful applying these charges over and above Plaintiff's principal loan balance.

31.     As a result of breach by the Lender and Servicer, Plaintiff has suffered harm as he has incurred additional charges to his loan balance and escrow account and are continuing to incur them to the present.

### VIOLATION OF GOVERNOR'S EXECUTIVE ORDERS

32.     On June 26, 2020, the Governor of the State of Texas issue Executive Order GA-28 which was issued a direct result of the Public Health Crisis, novel coronavirus, COVID-19. See Exhibit B – Executive Order GA-28.

33.     Such Executive Order limits the capacity of outdoor events unless the mayor or county judge has approved the gathering.

6

34.     Such Executive Order, GA-28, is effective beginning noon on June 26, 2020, and remains in effect to this date.

35.     As of the date of filing this Petition, the county judge for Caldwell County and/or the mayor for the county seat of Caldwell County did not issue an order authorizing an exception to Executive Order GA-28.

36.     The foreclosure sale in question is set from 10:00 am to 4:00 pm on October 6, 2020. See Exhibit C – Notice of Sale

37.     An Executive Order by the Governor of this state has the effect of law. Government Code Sec. 418.012.

38.     As such, any activity by the Lender or Servicer either directly or through its agent, the Substitute Trustee would be a violation of existing law.

39.     Lender or Servicer has threatened to conduct the sale even with the executive order in place.

40.     Therefore, Plaintiff request that this Court enter a declaratory judgment rescinding the sale which was in violation of the Executive Order.

## ALL PARAGRAPHS INCORPORATED

41.     Each of the proceedings and succeeding paragraphs are incorporated as part of the following cause of action.

## ATTORNEY'S FEES

42.     Plaintiffs are entitled to recover reasonable and necessary attorney fees pursuant to Tex. Civ. Prac. & Rem. Code Sec. 37.009 and pursuant to Tex. Civ. Prac. & Rem. Code Chapter 38 in this action for the breach of contract as authorized in Sec. 38.001(8).

7

## DISCOVERY – DISCLOSURES - TRCP 194.2

43.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff requests that Lender and Servicer disclose the information and material described in Rule 194.2 within 50 days of service.

## NOTICE – TRCP 193.7

44.    Plaintiff hereby puts Lender and Servicer on notice that Plaintiff intends to use discovery responses by Lender and Servicer as evidence at trial in accordance with such rights and privileges established by Texas Rules of Civil Procedure 193.7.

## RULE 47 DECLARATIONS

45.    By reason of all the above and foregoing it has become necessary to bring this suit for which it is now brought in a just and reasonable sum greatly in excess of the jurisdictional limits of this Honorable Court, together with all interest, pre and post judgment to which Plaintiff is entitled by law.    As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief more than $100,000 but not less than $250,000.   Plaintiff also seeks injunctive relief.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

46.    Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, should not be allowed to finalize foreclosure proceedings including transfer or any other disposition of the

8

property, or taking possession or exercise any control over the property located at 871 Political Rd, Lockhart, TX 78644.

47.     Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, has failed to follow state law notice provisions of the Texas Property Code and is not entitled to proceed with the sale of the property through wrongful foreclosure.

48.     Plaintiff will suffer irreparable injury if Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, is not enjoined from effectuating the wrongful foreclosure sale of 871 Political Rd, Lockhart, TX 78644.

49.     There is a substantial likelihood that Plaintiff will succeed on the merits of its lawsuit.

50.     The threatened harm to Plaintiff outweighs the harm of a preliminary injunction would inflict on the Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,.

51.     In addition, the property in question affords Plaintiff a substantial equity amount over and above the alleged debt owed to the Defendant, U.S. BANK NATIONAL

ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, 1.

52.     Issuance of a preliminary injunction is in the public interest.  The granting of a preliminary injunction would maintain the status quo and retains one of the most significant assets of the Plaintiff.  To deny the preliminary injunction would be to unjustly enrich the Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, and extinguish the Plaintiff substantial equity interest in its property.

53.     Plaintiff is willing to post a bond in an amount the court deems appropriate.

54.     Plaintiff asks the court to set his application for preliminary injunction for a hearing at the earliest possible time, and after hearing the application, issue a preliminary injunction against Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,.

### MOTION FOR TEMPORARY RESTRAINING ORDER

55.     All allegations are incorporated herein.

56.     The Plaintiff is entitled to a Temporary Restraining Order to restrain further transfer, or any other disposition of the property or taking possession or exercising any contract over the property as follows:

a.     Plaintiff will incur significant irreparable injury and loss.  The threaten damage which would be incurred would be significant and substantial as specified above and incorporated herein by reference.

b.     There is substantial likelihood of success on the merits as specified within.

c.     The threaten harm outweighs the harm a temporary restraining order would inflict on the Defendant specified within and incorporated herein by reference.

d.     The Temporary Restraining Order would serve the public interest as specified above, incorporated by reference.

e.     Plaintiff is willing to post a bond in the amount the court deems appropriate.

57.     For these reasons, Plaintiff asks the Court to issue a temporary restraining order preventing and refraining Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, its attorneys, agents, successors and/or assigns from consummating, continuing or effectuating any transaction, transferring the real property located at 871 Political Rd, Lockhart, TX  78644, perfecting its lien or security interest in the property, exercising any dominion or control over the real property, or attempting to take possession of the property, and to set the request for preliminary injunction for hearing at the earliest possible time.

11

58.     An Affidavit that proves the allegations in the Application for Injunction Relief is attached and incorporated by reference.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

a.     Invalidate the foreclosure sale that is scheduled for October 6, 2020.

b.     Issue an immediate temporary restraining order preventing and refraining Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, from consummating, continuing or effectuating any transaction, transferring the real property located at 871 Political Rd, Lockhart, TX  78644, perfecting its lien or security interest in the property, exercising any dominion or control over the real property, or attempting to take possession of the property,

c.     Following hearing and notice to Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, issue a temporary injunction to prevent Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING,, and its agents and employees from proceeding with

the foreclosure sale of Plaintiff's property during the pendency of this cause of action in order to maintain the status quo herein;

        d.      Order the Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, to be cited to appear and answer within and that upon final hearing, this Court grant declaratory judgment that no foreclosure sale of Plaintiff's house be validated during the pendency of this cause and enter a permanent injunction to prevent Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR LEHMAN ABS MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE ASSET-BACKED CERTIFICATE TRUST, SERIES 2001-B and NEWREZ LLC, F/K/A NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, its employees or agents from foreclosure validation on the property; and evicting Plaintiff from his property;

        e.      The Plaintiff be granted his damages, costs, and reasonable attorney fees, and any other relief at law or in equity to which they may be entitled.

RESPECTFULLY SUBMITTED,

A Newark Firm
1341 W. Mockingbird Lane, Ste 600W
Dallas, Texas 75247
Telephone:   (866)230-7236
Facsimile:    (888)316-3398
Email:        office@newarkfirm.com

By:    /s/Robert C. Newark, III
        Robert C. Newark, III
        Texas Bar No. 24040097
        Oklahoma Bar No. 21992
        ATTORNEY FOR PLAINTIFF

13

DocuSign Envelope ID: F3C852B1-198C-4BAB-AC0F-A24FCE3799AA

Unsworn Declaration Made Under Penalty of Perjury

I make this unsworn declaration under penalty of perjury in place of verification as allowed by Texas Civil Practices and Remedies Code Section 132.001.

1.    I, _____ Twyla Miller, is the Plaintiff in this matter.

2.    My date of birth is ___3/23/59_____.

3.    My address is _____4701 Staggerbrush Rd Apt 1413 Austin Tx 787489____.

4.    I declare under penalty of perjury that: PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND REQUEST FOR DISCLOSURES is true and correct to the best of my knowledge.

Signed under penalty of perjury in _____Travis_____ County, Texas.

DocuSigned by:

*Twyla Miller*

C601DB96846049C...

Declarant

EXHIBIT A

*# 18. TATCO*

*VOL. 0900 PAGE 690*          *Parcel R 37062*

3040
*VOL. 186 PAGE 19*

**OFFICIAL RECORDS**
*After Recording Return To:*
Texas American Title Company of Austin
710 Congress Avenue
Austin, Texas 78701
GF #

*Space Above This Line For Recorder's Use*          **361954**

# LAND AND MANUFACTURED HOME DEED OF TRUST

THIS DEED OF TRUST ("Deed of Trust") is executed as of    March 20, 1998
by    **TWYLA L. MILLER AND TODD B. SHANK**                                    , whose
address is    **11 INDIAN RIDGE LOCKHART, TX 78612**                          (hereinafter
"Grantor," whether one or more), to
a                        , whose address is                                   ,
favor of    **THE CIT GROUP/SALES FINANCING, INC.**            (hereinafter "Trustee"), in
address is    **9300 W. 110TH STREET BUILDING 55, SUITE 460 A, OVERLAND PARK, KS 66210**    whose
(hereinafter the "Beneficiary").

## RECITALS

A. Grantor (or one or more of them) is the record owner of fee title to a certain tract or parcel of real
property lying at approximately    **11 INDIAN RIDGE SUBDIVISION**
of    **LOCKHART**                              , County of    **CALDWELL**                    in the City
State of Texas, which said property does not exceed 200 acres and is more particularly described as
follows (hereinafter the "Tract"):

### SEE ATTACHED LEGAL DESCRIPTION "EXHIBIT A"

B. Grantor purchased the Tract at the same time as or in conjunction with, the purchase of a
manufactured home, and has attached or will attach such manufactured home to the Tract within a
reasonable time.

C. Grantor has obtained a loan from Beneficiary in the maximum principal amount of
**ONE HUNDRED THREE THOUSAND TWO HUNDRED SIXTY TWO AND 51/100**                        Dollars
($    **103,262.51**       ), as evidenced by a Promissory Note of even date herewith (the "Note"), made
by Grantor (or one or more of them), payable to the order of Beneficiary, providing for interest on the
unpaid principal balance at the rate or rates therein set forth, described, or provided for, and payable at
the times and in the manner set forth in the Note. The terms of the Note are incorporated herein by
reference.

## GRANT AND CONVEYANCE

NOW, THEREFORE, for value received and to secure (a) the payment and performance of each and
every obligation of Grantor under the Note, with interest, (b) any and all renewals, extensions,
modifications or replacements of the Note or the obligations evidenced thereby, regardless of the extent
of or the subject matter of any extension, renewal, modification or replacement, to the extent permitted
by law, (c) the payment and performance of each and every agreement and obligation of the Grantor
under the Note and this Deed of Trust and under any other instrument securing the payment and
performance of the obligation secured hereby, (d) the payment of all other amounts due hereunder and
all sums expended or advanced by Beneficiary or Trustee pursuant to the terms of the Note, and this
Deed of Trust and all other instruments securing the obligation secured hereby, Grantor irrevocably
grants and conveys to Trustee, in trust, with power of sale, the Tract together with all the improvements
now or hereafter erected on the Tract including without limitation the manufactured home described as
follows: **1998          PATRIOT              MH              1PTX6013BATX**

| Year | Make | Model | Serial Number |

and all easements, servitudes, rights, appurtenances, rents, royalties, mineral, oil and gas rights and

### SEE PAGES 2, 3, 4, 5, 6, 7 AND 8 FOR ADDITIONAL IMPORTANT TERMS

03/17/98        15:54        169208
72-3825A(12/96) Texas Deed of Trust                                    Initial(s) X TM    X TS        Page 1 of 8

profits, water rights and all fixtures now or hereafter permanently affixed to the Tract, together with any and all renewals, replacements and additions to the foregoing (all of the foregoing are hereinafter referred to as the "Tract"). Grantor warrants and agrees to defend generally the title to the Tract against any and all claims.

## COVENANTS

1. **Warranties of Title and Authority.** Grantor represents and warrants that it is lawfully seized of indefeasible fee title to the Tract, that it has authority and right to execute and deliver this Deed of Trust and to grant and convey the Tract, that it shall defend generally the title to the Tract against all claims and demands whatsoever, that the Property is free and clear of any and all liens, encumbrances, and interests of third parties (other than restrictions or easements set forth in the policy of title insurance obtained by Beneficiary in conjunction with the recordation of this Deed of Trust). Grantor agrees to cause the manufactured home to be attached to the Tract within 120 days from the date of this Deed of Trust.

2. **Obligations Mandatory.** Grantor shall promptly pay or cause to be paid to Beneficiary, or order, and shall promptly perform or cause to be performed, each and every obligation on the part of Grantor provided to be paid or performed in connection with the Note, this Deed of Trust and all other instruments securing the Note and the obligations thereunder. All such payments and obligations are mandatory, and Grantor's failure to accomplish any of them shall constitute a default under this Deed of Trust.

3. **Payments Protecting Against Liens.** Grantor shall pay when due, all taxes, fines, impositions, assessments, and governmental, municipal or other charges or impositions levied against or affecting the Tract, or which might become a lien thereon, and shall promptly deliver all receipts for such payments to Beneficiary upon request. Grantor shall promptly discharge or cause to be discharged any lien which has or may have priority over the lien created hereunder unless Grantor: (a) has received Beneficiary's consent to such lien or Beneficiary is the beneficiary of such lien, (b) contests in good faith the lien by, or defends against the enforcement of the lien in, legal proceedings which in Beneficiary's opinion prevent or stay the enforcement of such lien, or (c) secures from the holder of the lien an agreement subordinating the lien to the lien of this Deed of Trust in form and substance satisfactory to the Beneficiary.

4. **Insurance.** Grantor shall keep the manufactured home and other improvements now existing or hereafter erected on the Tract insured against loss or damage to their full insurable value or to the extent of the indebtedness secured hereby, whichever is less under standard "all risk" coverage insuring, among other things, against the perils of fire, vandalism and malicious mischief and, if requested by the Beneficiary, flood insurance, with a company chosen by Grantor, subject to Beneficiary's approval which shall not be unreasonably withheld. Grantor shall furnish Beneficiary with reasonable evidence of such coverage. All insurance policies and renewals shall be in a form acceptable to Beneficiary and shall include a standard mortgage clause. Beneficiary shall have the right to hold all of the foregoing insurance policies and renewals thereof. In the event of loss, Grantor shall give immediate notice to Beneficiary, who may make proof of loss, and each insurance company concerned is hereby authorized and directed to make payment for such loss to Beneficiary instead of Grantor or Beneficiary and Grantor jointly. If Grantor fails to maintain the insurance coverage required hereunder or if any insurance required hereunder is canceled, expires, or cannot be obtained, Beneficiary may, at Beneficiary's option, hold Grantor in default or may procure substitute insurance protecting Beneficiary

**SEE PAGES 1, 3, 4, 5, 6, 7 AND 8 FOR ADDITIONAL IMPORTANT TERMS**

*Miller, Twyla .*
*03/17/08          15:54*
*169208*
*72-38298*

Initial(s) X **Tm**   X **TS**
Page 2 of 8

and Grantor or either. On demand, Grantor shall pay Beneficiary the additional cost of such insurance together with interest on such additional cost from the date of advance until the date of payment at the rate set forth in the Note. If not applied to the purchase of other insurance, the refund of unearned insurance premiums will be refunded to Grantor. Beneficiary will apply all proceeds from required insurance toward repair or replacement of the manufactured home and Tract or (at Beneficiary's option) to repayment of this Note.

**5. Taxes and Insurance.** In addition to the monthly payments Grantor is obligated to make to Beneficiary under the Note, Grantor shall pay all taxes, insurance and assessments of every kind and nature affecting the Tract as they become due.

**6. Maintenance and Use of Tract.** Grantor shall: (a) maintain the Tract and all parts thereof at all times in good order and condition and repair, (b) keep and maintain all buildings and other improvements, including the manufactured home, which may be or become part of the Tract in good and neat order and repair and to allow no nuisances to exist or to be maintained, (c) to comply with all federal, state, county, municipal, and other governmental statutes, ordinances, laws, and regulations and all covenants, conditions, and restrictions affecting the Tract or any condition or activity respecting the Tract, and (d) allow Beneficiary or its designated representative to inspect the Tract at all reasonable times during the term hereof if Beneficiary gives prior notice to the Grantor, which notice shall state the reasonable cause for the Beneficiary's inspection. Grantor agrees to do any act, which from the character or use of the Tract, is reasonably necessary to protect and preserve the fair market value of the Tract.

**7. Real Estate Covenants.** Grantor shall comply with the provisions of all deed restrictions, and if applicable, covenants, bylaws, or regulations of a planned unit development or condominium.

**8. Mortgage Title Insurance.** Grantor shall obtain and provide Beneficiary with a policy of title insurance insuring the lien of this Deed of Trust. Such policy shall be in such form and issued by such companies as are reasonably acceptable to Beneficiary and shall be in an amount not less than the face amount of the Note.

**9. Beneficiary's Performance in Grantor's Stead.** If Grantor fails to make any payment, to do any act or thing, or to perform any obligation herein or if any legal proceeding is pending which will significantly affect Beneficiary's rights hereunder in the Tract, Beneficiary may, but without obligation to do so, and without notice to or demand to Grantor, and without releasing Grantor from any obligation hereunder: (a) make, do, pay, or perform the same in such manner and to such extent as Beneficiary may deem reasonably necessary or desirable to protect the lien and security hereof or to protect any other legitimate interest of the Beneficiary or Trustee, Beneficiary for such purposes being authorized to enter upon the Tract at all reasonable times so long as such entry shall not otherwise be unlawful or constitute a breach of the peace and to commence, appear in, or defend any action or proceeding purporting to affect the lien or security hereof; or (b) pay, purchase, contest, or compromise any encumbrance, charge, or lien which in the sole judgment of Beneficiary appears to be prior to the interest of Beneficiary or Trustee in the Tract. Amounts paid or disbursed pursuant to this section shall become additional debts of the Grantor secured hereunder. On demand, Grantor shall pay and reimburse Beneficiary for amounts paid or incurred by Beneficiary hereunder together with interest thereon from the date of advance until the date of payment at the rate set forth in the Note.

**SEE PAGES 1, 2, 4, 5, 6, 7 AND 8 FOR ADDITIONAL IMPORTANT TERMS**

Miller, Twyla
03/17/58          15:54
169208
72-3829C

Initial(s) X *TM*  X *TS*
Page 3 of 8

10. Repayment of Advances. Grantor shall immediately repay to Beneficiary all sums with interest at the rate set forth in the Note, which at any time may be paid or advanced by Beneficiary for the payment of insurance, taxes, assessments, governmental, municipal, or other charges or impositions, title searches, title reports, or abstracts, any obligation secured by a prior lien upon or prior interest in the Tract, and any other advances made by Beneficiary which are or appear to be necessary or desirable to, in Beneficiary's sole discretion, to maintain this Deed of Trust as a prior, valid, and subsisting lien upon the Tract, to preserve and protect Beneficiary's interest therein or hereunder, or to preserve, repair or maintain the Tract. All such advances shall be wholly optional on the part of Beneficiary, and Grantor's obligation to repay the same, with interest, to Beneficiary shall be secured by the lien of this Deed of Trust. The amount of each such advance shall, for the period during which it remains unpaid and both before and after judgment, bear interest at the annual rate set forth in the Note or at the highest lawful rate.

11. Application of Awards and Proceeds. Beneficiary shall be entitled to all compensation, awards, proceeds and other payments and relief, direct or indirect, direct or consequential, receivable in connection with any condemnation or other taking of any part of the Tract, or for any conveyance in lieu of condemnation. Such amounts shall be and hereby are assigned to and shall be paid to the Beneficiary. To the fullest extent permitted by law, Beneficiary shall be entitled at its option to commence, appear in and prosecute in its own name any action or proceeding, and to make any compromise or settlement, in connection with such taking or damage.

12. Assignment of Rents. As additional security, Grantor hereby absolutely assigns to Beneficiary all rents, issues, royalties, and profits of the Tract. Until Grantor shall default hereunder, Grantor shall have the right to collect all such rents, issues, royalties, and profits earned prior to default as they become due and payable. If Grantor shall default hereunder, Grantor's right to collect any of such monies shall cease and Beneficiary shall have the right, with or without taking possession of the Tract, to collect all such rents, issues, royalties, and profits earned prior to default as they become due and payable. If Grantor shall default hereunder, Grantor's right to collect any of such monies shall cease and Beneficiary shall have the right, with or without taking possession of the Tract, to collect all such rents, issues, royalties, and profits. Failure of the Beneficiary at any time to collect any such monies shall not in any manner affect the subsequent enforcement by Beneficiary of the right, power and authority to collect the same. Nothing contained herein, nor the exercise of the right by Beneficiary to collect such sums, shall be construed as an affirmation by Beneficiary of any tenancy, lease or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease or option.

13. No Waiver of Rights by Collection of Proceeds. The entering upon and taking possession of the Tract or the collection of rents, issues, royalties, and profits or the application or release thereof as aforesaid shall not cure or waive any default or notice of default hereunder, and shall not invalidate any act done pursuant to said notice of default.

14. Acceleration. Time is of the essence hereof. All of the obligations of the Grantor hereunder and under the Note shall become immediately due and payable, following Beneficiary's delivery of all notices required by applicable law and the expiration of all cure periods required by applicable law, if any, (a) upon the discovery that any representation or warranty contained herein is untrue or was untrue as of the effective date of such representation or warranty, including without limitation the representations and warranties set forth in the recitals hereto, (b) upon Grantor's breach of or failure to

**SEE PAGES 1, 2, 3, 5, 6, 7 AND 8 FOR ADDITIONAL IMPORTANT TERMS**

03/17/98            15:54
Miller, Twyla
169208
72-3829D

Initial(s) X _TM_  X _TS_
Page 4 of 8

comply with any of its agreements hereunder (including, but not limited to, default in the timely payment of any installment of principal and interest under the Note), (c) if Grantor makes an assignment for the benefit of creditors, (d) if a receiver is appointed for Grantor or any part of the Tract, (e) if Grantor files a petition in bankruptcy, or if Grantor is adjudicated a bankrupt or, (f) upon the removal of the manufactured home from the Tract. Thereupon, Beneficiary may invoke the power of sale and any other remedies permitted by applicable law. Beneficiary shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including but not limited to, reasonable attorneys' fees and costs of title evidence. If Beneficiary invokes the power of sale, Beneficiary or Trustee shall give notice of the time, place and terms of sale as required by applicable law. Grantor authorizes Trustee to sell the Tract (including, at the Beneficiary's option, the manufactured home) to the highest bidder for cash in one or more parcels and in such order as the Trustee may determine. Beneficiary or its agents may purchase the Tract at any sale. The Trustee will deliver to the purchaser hereunder a Trustee's deed conveying indefeasible title to the Tract so sold with covenants of general warranty. Grantor covenants and agrees to defend generally the purchaser's title to the Tract so sold against all claims and demands. The recitals in the Trustee's deed will be prima facie evidence of the truth of the statements made therein. The Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of sale, including but not limited to reasonable trustee's and attorneys' fees and costs of title evidence, (b) to all sums secured by this Deed of Trust, and (c) the excess, if any, to the persons legally entitled thereto. If the Tract is sold hereunder, Grantor or any person occupying or possessing the Tract through or under Grantor shall immediately surrender possession of the Tract to the purchaser at such sale. If possession is not surrendered, Grantor or such other person will be a tenant at sufferance and may be removed by writ of possession. Grantor waives the right to notice of intent to require immediate payment in full of all sums secured by this Deed of Trust to the fullest extent permitted by law.

15. Substitution of Trustee. At any time during the term of this Deed of Trust, Beneficiary, with or without cause, may remove Trustee and appoint a successor Trustee to act hereunder. From the time a substitution of Trustee is accomplished the new Trustee shall succeed without conveyance of the Tract to all powers, duties, authority, and title of the Trustee named herein and of any successor Trustee.

16. Usury. If the loan evidenced by the Note is subject to a law which sets a maximum rate on interest which may be charged, and that law is interpreted so that the interest or other loan charges collected or to be collected in connection with the loan evidenced by the Note exceed the permitted limits, then (a) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from the Grantor which exceeded permitted limits will be refunded to Grantor. Beneficiary may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to the Grantor. If a refund reduces the principal balance of the Note, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

17. Security Agreement. With respect to all parts of the Tract that constitute personal property, this Deed of Trust shall constitute a security agreement between Grantor, as debtor and Beneficiary, as secured party, and, cumulative of all other rights of Beneficiary under this Deed of Trust, Beneficiary shall have all of the rights and remedies available to a secured party under Article 9 of the Texas Uniform Commercial Code (Chapter 9 of the Texas Business and Commerce Code). Provided however, that nothing herein shall preclude Beneficiary from proceeding as to both real and personal property in

SEE PAGES 1, 2, 3, 4, 6, 7 AND 8 FOR ADDITIONAL IMPORTANT TERMS

03/17/98      15:54
Miller, Twyla
169208
72-3829E

Initial(s) X _TM_ X_TS_
Page 5 of 8

accordance with Beneficiary's rights and remedies in respect of the Real Property, as provided in Section 9.501(d) of the Texas Business and Commerce Code (1991). A carbon, photographic, or other reproduction or copy of this Deed of Trust or of a financing statement related to or executed pursuant to this Deed of Trust shall be sufficient as and may be filed as an original financing statement in connection with the security interest granted to the Beneficiary herein.

18. **Fixture Filing.** With respect to any fixtures included within the definition of the Tract, and with respect to any item of personal property (including any goods) that are or may become fixtures, this Deed of Trust shall constitute a financing statement under the Texas Uniform Commercial Code. It is intended that as to such fixtures any items of personal property secured hereby (including goods) that are or may become such fixtures, as well as the proceeds and products thereof, this Deed of Trust shall be effective as a financing statement filed as a fixture filing in the Real Property Records in the county in which the Tract is located.

19. **Rights Cumulative and Not Waived.** The rights and remedies accorded by this Deed of Trust shall be in addition to, and not in substitution of, any rights or remedies available under now existing or hereafter arising applicable law. All rights and remedies provided for in this Deed of Trust or afforded by law or equity are distinct and cumulative and may be exercised concurrently, independently, or successively. The failure on the part of the Beneficiary or the Trustee to promptly enforce any right hereunder shall not operate as a waiver of such right and the waiver of any default shall not constitute a waiver of any subsequent or other default.

20. **Binding on Successors.** This Deed of Trust shall be binding upon and shall inure to the benefit of the respective grantees, transferees, heirs, devisees, personal representatives, successors, and assigns of the parties hereto. The term "Beneficiary" as used herein shall mean the owner and holder, including any pledgee, of the Note and this Deed of Trust.

21. **Notices.** Any notice to the Grantor provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Tract address or any other address that Grantor designates by notice to Beneficiary. Any notice to Beneficiary shall be given by mail to Beneficiary's address stated herein or any other address Beneficiary designates in a notice to Grantor. Any notice provided for or required hereunder shall be deemed given when given in the manner set forth in this section.

22. **Partial Invalidity; Governing Law; Severability.** In the event any of the sums intended to be secured by this Deed of Trust cannot lawfully be secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. This Deed of Trust shall be governed by the laws of the State of Texas and applicable federal law. In the event any provision of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. The provisions of the Note and this Deed of Trust are severable.

**SEE PAGES 1, 2, 3, 4, 5, 7 AND 8 FOR ADDITIONAL IMPORTANT TERMS**

*MILLER, TWILA*
*04/17/98          15:54*
*109208*
*72-3829F*

Initial(s) X ___ X ___
Page 6 of 8

**23. Transfers or Further Encumbrances.** In the event either of the transactions or occurrences mentioned in the following items (a) and (b) takes place without Beneficiary's prior review and written consent (which consent may be given or withheld in Beneficiary's absolute and unqualified discretion), Beneficiary may, at its option, declare all of the obligations hereunder to be immediately due and payable; (a) the Tract or any part or any interest therein is sold, contracted to be sold, conveyed, assigned, or transferred, whether voluntarily, involuntarily, or by operation of law; or (b) the Tract or any part or any interest therein is subject to any mortgage, deed of trust, or other security device junior or inferior to the liens created herein or hereby.

**24. Release of Lien.** If Grantor performs all of the covenants and pays the Note according to its terms, this Deed of Trust shall have no further effect, and Beneficiary shall release this Deed of Trust. Recordation of the release of this Deed of Trust shall be at the Grantor's expense.

**25. Grantor's Copy.** Grantor has been given one conformed copy of the Note and this Deed of Trust.

**26. Hazardous Substances.** Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Tract. Grantor shall not do, nor allow anyone else to do, anything affecting the Tract that is in violation of any environmental law. Hazardous Substances are those substances defined as toxic or hazardous under federal or state laws that relate to health, safety or environmental protection. Notwithstanding the foregoing, Grantor may maintain small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to the maintenance of the Tract provided same are stored, utilized, released and disposed of in a lawful manner.

**27. Expenses of Beneficiary and Trustee.** Except as may be prohibited by applicable law, Grantor shall pay all costs, expenses and fees incurred by the Trustee or the Beneficiary which are related to, or which are in any way incurred by the Trustee or Beneficiary in connection with the enforcement or protection of the Trustee's and Beneficiary's rights and interests hereunder or under the Note. In the event the Beneficiary or Trustee is required to take any action hereunder to secure possession of the manufactured home secured hereby, Grantor shall pay all actual and reasonable out-of-pocket expenses incurred in connection with the repossession or foreclosure, including costs of storing, reconditioning, and reselling the manufactured home.

**28. Interpretation.** Whenever the context so requires, the singular shall include the plural, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include both other genders. In the event there is or comes to be more than one Grantor hereunder, the liability of each is joint and several.

**ELECTION BY BENEFICIARY:** Grantor is hereby notified that this transaction is a land and home credit transaction permitted by Article 6A.11 of the Texas Credit Code and Beneficiary has elected to treat the manufactured home as if it were residential real estate for all purposes in connection with this transaction.

**29. Vendor's Lien.** The Note secured hereby is additionally secured by a Vendor's Lien retained in the Deed of even date herewith conveying the Tract to Grantor, which Vendor's Lien has been assigned to Beneficiary, this Deed of Trust being additional security therefor.

**SEE PAGES 1, 2, 3, 4, 5, 6 AND 8 FOR ADDITIONAL IMPORTANT TERMS**

MILLER, TWYLA
03/17/98        15:54
169208
72-3829G

Initial(s) X _TM_ · X _____

Page 7 of 8

VOL. **186** PAGE **26**

30. Originals and True Copies of this Deed of Trust. This Deed of Trust may be executed and then multiple copies made thereof as necessary, but only the Deed of Trust bearing the original signatures shall be deemed the Original. No security interest in the subject real estate may be created other than through possession and recording of the Original.

    See attached Exhibit "B" for Renewal and Extension Addendum

        **SEE PAGES 1, 2, 3, 4, 5, 6 AND 7 FOR ADDITIONAL IMPORTANT TERMS**

SEE EXHIBIT "B" ATTACHED HERE AND MADE A PART OF FOR RENEWAL AND EXTENSION PROVISIONS.

    BY SIGNING BELOW, Grantor accepts and agrees to the terms and conditions set forth herein.

03/23/98

Name   **TWYLA L. MILLER**

Name   **TODD B. SHANK**

I agree to give the Lender a security interest in the property.
I am not obligated to pay by signing below.

_____
Signature of Non-Obligor Spouse

STATE OF   *Texas*
COUNTY OF   *Travis*  }

Before Me the undersigned, a Notary Public in and for said County and State on   *3/20/98*

personally appeared   Twyla L. Miller and Todd B. Shank

known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on   *3/20/98* .

_____
Notary Public

Commission Expires:   *4/21/99*

RETURN ORIGINAL TO:
  THE CIT GROUP/SALES FINANCING, INC.
  P.O. BOX 24610
  OKLAHOMA CITY, OK 73124-0610
  (800) 621-1433

03/17/98    15:54    109208

72-3829H

SUSAN BALDERRAMA - COOK
Notary Public, State of Texas
My Commission Expires
APRIL 21, 1999.

*Page 8 of 8*

VOL. 0900 PAGE 698

Exhibit "A"

Lot Eleven (11), OF INDIAN RIDGE SUBDIVISION, A SUBDIVISION IN
CALDWELL COUNTY, TEXAS, ACCORDING TO THE RECORDED MAP AND OR PLAT
THEREOF, RECORDED IN CABINET A, SLIDE 117, OF THE PLAT RECORDS
OF CALDWELL COUNTY, TEXAS.

VOL. **186** PAGE 28

VOL. **0900** PAGE 039

EXHIBIT "B"

TO

LAND AND MANUFACTURED HOME DEED OF TRUST

This Deed of Trust and the note secured hereby are given,
in part, to take up, and in renewal and extension of the
following note and lien, to-wit:

Mechanic's Lien Note of even date herewith,
in the principal amount of $75,262.51,
executed by Twyla L. Miller and Todd B.
Shank, and made payable to the order of
Mobile Home Brokers, Inc., dba Holigan
Companies, said note being additionally
secured by a Mechanic's Lien Contract
of even date herewith, executed by
Twyla L. Miller and Todd B. Shank, as
Owners, and Mobile Home Brokers, Inc.,
dba Holigan Companies, as Contractor,
said note and Mechanic's Lien Contract
having been assigned by instrument of
even date herewith to THE CIT GROUP/SALES
FINANCING, INC.

FILED MAR 2 6 1998

10:30 A. M

*Shirley Wilhelm*

COUNTY CLERK
BASTROP COUNTY, TEXAS

STATE OF TEXAS        COUNTY OF BASTROP
I hereby certify that this instrument
was FILED on the date and time stamped
hereon by me; and was duly RECORDED, in
the Volume and Page of the named
RECORDS of Bastrop County, Texas, as
stamped hereon by me on

APR 0 1 1998

*Shirley Wilhelm*

COUNTY CLERK
BASTROP COUNTY, TEXAS

VOL. 186 PAGE 29

27.00

Texas American Title

RECORDED

COMPARED

VOL. 186 PAGE 30

FILED this 15th day of May 19 98
10:18 A M
NINA S. SELLS
COUNTY CLERK, CALDWELL COUNTY, TEXAS
By _____ Deputy

MAY 1 8 1998

Nina S. Sells
COUNTY CLERK
CALDWELL COUNTY, TEXAS

EXHIBIT B



GOVERNOR GREG ABBOTT

June 26, 2020

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45AM O'CLOCK

JUN 26 2020

Secretary of State

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas  78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

Executive Order No. GA-28 relating to the targeted response to the COVID-19
disaster as part of the reopening of Texas.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

# 𝔈𝔵𝔢𝔠𝔲𝔱𝔦𝔳𝔢 𝔒𝔯𝔡𝔢𝔯

## BY THE
## GOVERNOR OF THE STATE OF TEXAS

**Executive Department**
**Austin, Texas**
**June 26, 2020**

### EXECUTIVE ORDER
### GA 28

*Relating to the targeted response to the COVID-19 disaster*
*as part of the reopening of Texas.*

———————————

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, in each subsequent month effective through today, I have renewed the disaster declaration for all Texas counties; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 continues to represent a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code; and

WHEREAS, I have issued executive orders and suspensions of Texas laws in response to COVID-19, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, I issued Executive Order GA-08 on March 19, 2020, mandating certain social-distancing restrictions for Texans in accordance with guidelines promulgated by President Donald J. Trump and the Centers for Disease Control and Prevention (CDC); and

WHEREAS, I issued Executive Order GA-14 on March 31, 2020, expanding the social-distancing restrictions for Texans based on guidance from health experts and the President; and

WHEREAS, I subsequently issued Executive Orders GA-16, GA-18, GA-21, GA-23, and GA-26 from April through early June 2020, aiming to achieve the least restrictive means of combatting the threat to public health by continuing certain social-distancing restrictions, while implementing a safe, strategic plan to Open Texas; and

WHEREAS, as Texas reopens in the midst of COVID-19, increased spread is to be expected, and the key to controlling the spread and keeping Texas residents safe is for all Texans to consistently follow good hygiene and social-distancing practices, especially those set forth in the minimum standard health protocols from DSHS; and

WHEREAS, due to recent substantial increases in COVID-19 positive cases, and increases in the COVID-19 positivity rate and hospitalizations resulting from COVID-19, targeted and temporary adjustments to the reopening plan are needed to achieve the

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45am O'CLOCK

JUN 2 6 2020

*Governor Greg Abbott*
June 26, 2020

*Executive Order GA-28*
Page 2

least restrictive means for reducing the growing spread of COVID-19 and the resulting imminent threat to public health, and to avoid a need for more extreme measures; and

WHEREAS, everyone must act safely, and to that end, this executive order and prior executive orders provide that all persons should follow the health protocols from DSHS, which whenever achieved will mean compliance with the minimum standards for safely reopening, but which should not be used to fault those who act in good faith but can only substantially comply with the standards in light of scarce resources and other extenuating COVID-19 circumstances; and

WHEREAS, the "governor is responsible for meeting … the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and the legislature has given the governor broad authority to fulfill that responsibility; and

WHEREAS, failure to comply with any executive order issued during the COVID-19 disaster is an offense punishable under Section 418.173 by a fine not to exceed $1,000, and may be subject to regulatory enforcement;

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, and in accordance with guidance from DSHS Commissioner Dr. Hellerstedt and other medical advisors, the Governor's Strike Force to Open Texas, the White House, and the CDC, do hereby order the following on a statewide basis effective at noon on June 26, 2020:

Every business establishment in Texas shall operate at no more than 50 percent of the total listed occupancy of the establishment; *provided, however, that*:

1. There is no occupancy limit for the following:
   a. any services listed by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) in its Guidance on the Essential Critical Infrastructure Workforce, Version 3.1 or any subsequent version;
   b. religious services, including those conducted in churches, congregations, and houses of worship;
   c. local government operations, including county and municipal governmental operations relating to licensing (including marriage licenses), permitting, recordation, and document-filing services, as determined by the local government;
   d. child-care services;
   e. youth camps, including but not limited to those defined as such under Chapter 141 of the Texas Health and Safety Code, and including all summer camps and other daytime and overnight camps for youths; and
   f. recreational sports programs for youths and adults;

2. Except as provided below by paragraph number 5, this 50 percent occupancy limit does not apply to outdoor areas, events, or establishments, except that the following outdoor areas or outdoor venues shall operate at no more than 50 percent of the normal operating limits as determined by the owner:
   a. professional, collegiate, or similar sporting events;
   b. swimming pools;
   c. water parks;
   d. museums and libraries;
   e. zoos, aquariums, natural caverns, and similar facilities; and

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45am O'CLOCK

JUN 2 6 2020

*Governor Greg Abbott*
June 26, 2020

*Executive Order GA-28*
Page 3

     f.  rodeos and equestrian events;

3.  This 50 percent occupancy limit does not apply to the following establishments that operate with at least six feet of social distancing between work stations:

    a.  cosmetology salons, hair salons, barber shops, nail salons/shops, and other establishments where licensed cosmetologists or barbers practice their trade;

    b.  massage establishments and other facilities where licensed massage therapists or other persons licensed or otherwise authorized to practice under Chapter 455 of the Texas Occupations Code practice their trade; and

    c.  other personal-care and beauty services such as tanning salons, tattoo studios, piercing studios, hair removal services, and hair loss treatment and growth services;

4.  Amusement parks shall operate at no more than 50 percent of the normal operating limits as determined by the owner;

5.  For any outdoor gathering in excess of 100 people, other than those set forth above in paragraph numbers 1, 2, or 4, the gathering is prohibited unless the mayor of the city in which the gathering is held, or the county judge in the case of a gathering in an unincorporated area, approves of the gathering, and such approval can be made subject to certain conditions or restrictions not inconsistent with this executive order;

6.  For dine-in services by restaurants that have less than 51 percent of their gross receipts from the sale of alcoholic beverages, the occupancy limit shall remain at 75 percent until 12:01 a.m. on June 29, 2020, at which time such restaurants may only operate at up to 50 percent of the total listed occupancy of the restaurant, subject to paragraph number 9 below;

7.  People shall not visit bars or similar establishments that hold a permit from the Texas Alcoholic Beverage Commission (TABC) and are not restaurants as defined above in paragraph number 6; provided, however, that the use by such bars or similar establishments of drive-thru, pickup, or delivery options for food and drinks is allowed to the extent authorized by TABC;

8.  People shall not use commercial rafting or tubing services, including rental of rafts or tubes and transportation of people for the purpose of rafting or tubing;

9.  For any business establishment that is subject to a 50 percent "total listed occupancy" limit or "normal operating limit," and that is in a county that has filed with DSHS, and is in compliance with, the requisite attestation form promulgated by DSHS regarding minimal cases of COVID-19, the business establishment may operate at up to 75 percent of the total listed occupancy or normal operating limit of the establishment;

10.  For purposes of this executive order, facilities with retractable roofs are considered indoor facilities, whether the roof is opened or closed;

11.  Staff members are not included in determining operating levels, except for manufacturing services and office workers;

12.  Except as provided in this executive order or in the minimum standard health protocols recommended by DSHS, found at www.dshs.texas.gov/coronavirus, people should not be in groups larger than ten and should maintain six feet of social distancing from those not in their group;

13.  People over the age of 65 are strongly encouraged to stay at home as much as possible; to maintain appropriate distance from any member of the household who has been out of the residence in the previous 14 days; and, if leaving the

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
9:45Am O'CLOCK

JUN 2 6 2020

home, to implement social distancing and to practice good hygiene, environmental cleanliness, and sanitation;

14. In providing or obtaining services, every person (including individuals, businesses, and other legal entities) should use good-faith efforts and available resources to follow the minimum standard health protocols recommended by DSHS;

15. Nothing in this executive order or the DSHS minimum standards precludes requiring a customer to follow additional hygiene measures when obtaining services.  Individuals are encouraged to wear appropriate face coverings, but no jurisdiction can impose a civil or criminal penalty for failure to wear a face covering;

16. People shall not visit nursing homes, state supported living centers, assisted living facilities, or long-term care facilities unless as determined through guidance from the Texas Health and Human Services Commission (HHSC). Nursing homes, state supported living centers, assisted living facilities, and long-term care facilities should follow infection control policies and practices set forth by HHSC, including minimizing the movement of staff between facilities whenever possible; and

17. For the remainder of the 2019-2020 school year, public schools may resume operations for the summer as provided by, and under the minimum standard health protocols found in, guidance issued by the Texas Education Agency (TEA).  Private schools and institutions of higher education are encouraged to establish similar standards.  Notwithstanding anything herein to the contrary, schools may conduct graduation ceremonies consistent with the minimum standard health protocols found in guidance issued by TEA.

Notwithstanding anything herein to the contrary, the governor may by proclamation add to the list of establishments or venues that people shall not visit.

This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts services allowed by this executive order, allows gatherings prohibited by this executive order, or expands the list or scope of services as set forth in this executive order.  Pursuant to Section 418.016(a) of the Texas Government Code, I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

All existing state executive orders relating to COVID-19 are amended to eliminate confinement in jail as an available penalty for violating the executive orders.  To the extent any order issued by local officials in response to the COVID-19 disaster would allow confinement in jail as an available penalty for violating a COVID-19-related order, that order allowing confinement in jail is superseded, and I hereby suspend all relevant laws to the extent necessary to ensure that local officials do not confine people in jail for violating any executive order or local order issued in response to the COVID-19 disaster.

This executive order supersedes Executive Order GA-26, but does not supersede Executive Orders GA-10, GA-13, GA-17, GA-19, GA-24, GA-25, or GA-27.  This

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45Am  O'CLOCK

JUN 2 6 2020

*Governor Greg Abbott*
June 26, 2020

*Executive Order GA-28*
Page 5

executive order shall remain in effect and in full force unless it is modified, amended, rescinded, or superseded by the governor. This executive order may also be amended by proclamation of the governor.



Given under my hand this the 26th day of June, 2020.

GREG ABBOTT
Governor

ATTESTED BY:

RUTH R. HUGHS
Secretary of State

EXHIBIT C

Filed this ___ day of _____
10:35 A M

**TERESA RODRIGUEZ**
COUNTY CLERK, CALDWELL COUNTY, TEXAS
By _____ Deputy

C&M No. 44-19-2325/ FILE NOS

# NOTICE OF TRUSTEE'S SALE AND APPOINTMENT OF SUBSTITUTE TRUSTEE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. Sender is: Codilis & Moody, P.C., 400 North Sam Houston Parkway East, Suite 900A, Houston, Texas 77060**

### INSTRUMENT BEING FORECLOSED AND MORTGAGE SERVICER INFORMATION

Deed of Trust dated March 20, 1998 and recorded under Clerk's File No. 981954, in the real property records of CALDWELL County Texas, with Twyla L. Miller and Todd B. Shank as Grantor(s) and The CIT Group/Sales Financing, Inc. as Original Mortgagee.

Deed of Trust executed by Twyla L. Miller and Todd B. Shank securing payment of the indebtedness in the original principal amount of $103,262.51 and obligation therein described including but not limited to the promissory note and all modifications, renewal and extensions of the promissory note (the "Note") executed by Twyla L. Miller and Todd B. Shank. U.S. Bank National Association, as Trustee, for Lehman ABS Manufactured Housing Contract Senior/Subordinate Asset-Backed Certificate Trust, Series 2001-B is the current mortgagee (the "Mortgagee") of the Note and Deed of Trust or Contract Lien.

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan. Shellpoint Mortgage Servicing is acting as the Mortgage Servicer for the Mortgagee. Shellpoint Mortgage Servicing, is representing the Mortgagee, whose address is: 75 Beattie Place, Suite 300, Greenville, SC 29601.

**Legal Description:**
LOT ELEVEN (11), OF INDIAN RIDGE SUBDIVISION, A SUBDIVISION IN CALDWELL COUNTY, TEXAS, ACCORDING TO THE RECORDED MAP AND OR PLAT THEREOF, RECORDED IN CABINET A, SLIDE 117, OF THE PLAT RECORDS OF CALDWELL COUNTY, TEXAS.

### SALE INFORMATION

**Date of Sale:** 10/06/2020          **Earliest Time Sale Will Begin:** 1:00 PM

**Location of Sale:** The place of the sale shall be: CALDWELL County Courthouse, Texas at the following location: The Main Entrance of the new Caldwell County Judicial Center, located at 1703 S Colorado St, Lockhart, Texas 78644, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court

### TERMS OF SALE

A default has occurred in the payment of said herein referenced indebtedness, and the same is now wholly due, and the Mortgagee and/or Mortgage Servicer has requested the hereinafter appointed Substitute Trustee to sell said property to the highest bidder for cash and to distribute or apply the proceeds of said sale in accordance with the terms of said Deed of Trust.

The Sale will be conducted as a public auction to the highest bidder for cash, except that Mortgagee's bid may be by credit against the indebtedness secured by the lien of the Deed of Trust. Pursuant to the Deed of Trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to Section 51.009 of the Texas Property Code, the Property will be sold in "AS IS,"

44-19-2325
CALDWELL


4726481

"WHERE IS" condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the Deed of Trust.

The sale will begin at the earliest time stated above, or within three (3) hours after that time. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

**WHEREAS, in my capacity as attorney for the Mortgagee and/or its Mortgage Servicer, and pursuant to Section 51.0076 of the Texas Property Code, I HEREBY APPOINT AND DESIGNATE Angela Zavala, Michelle Jones, Elizabeth Anderson, Richard Zavala Jr., Sharlet Watts, Thomas Delaney, Danya Gladney, Aaron Demuth, Codilis & Moody, P.C., or ServiceLink Agency Sales And Posting, as Substitute Trustee.**

The address for the Substitute Trustee for purposes of Section 51.0075(e) of the Texas Property Code is:
Codilis & Moody, P.C.
400 N. Sam Houston Pkwy E, Suite 900A
Houston, TX 77060
(281) 925-5200

Executed on 09/08/2020.

/s/ Lisa Collins SBOT No. 24115338, Attorney at Law
Codilis & Moody, P.C.
400 N. Sam Houston Pkwy E, Suite 900A
Houston, TX 77060
(281) 925-5200

Posted and filed by: *Sharlet Watts*

Printed Name: *Sharlet Watts*

C&M No. 44-19-2325